UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
JAMES F. LEWIS,                    )
                                   )
                Plaintiff,         )
                                   )        CIVIL ACTION
       v.                          )        NO. 10-11934-WGY
                                   )
WHITMAN-HANSON REGIONAL SCHOOL     )
DISTRICT,                          )
                                   )
                Defendant.         )
                                   )
_____)

MEMORANDUM AND ORDER

YOUNG, D.J.                              February 13, 2012

I.    INTRODUCTION

      James F. Lewis ("Lewis") brought this action against

Whitman-Hanson Regional School District ("the School District")

alleging he was disparately disciplined and demoted during his

employment based upon his age, in violation of the Age

Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C.

§ 623(a)(1), and the Massachusetts Fair Employment Practices Act,

Massachusetts General Laws chapter 151B, § 4(1B).  The School

District now moves for summary judgment.

**A.    Procedural Posture**

Lewis filed this suit on November 10, 2010.  Compl. Request Jury Trial ("Compl."), ECF No. 1.  The School District filed an answer to Lewis's complaint on January 19, 2011, Def.'s Answer Compl. Demand Jury Trial, ECF No. 3, and subsequently moved for summary judgment on August 17, 2011, Def. Whitman-Hanson Regional School District's Mot. Summ. J., ECF No. 16.; Def. Whitman-Hanson Regional School District's Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 17.  On September 30, 2011, Lewis opposed the motion.  Opp'n Pl. James F. Lewis, Def. Whitman-Hanson Regional School District's Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 23.  On October 11, 2011, the School District filed a reply.  Def. Whitman-Hanson Regional School District's Reply Opp'n Mot. Summ. J. ("Def.'s Reply"), ECF No. 26.

**B.    Facts in the Light Most Favorable to Lewis**[1]

The School District, serving the towns of Whitman and Hanson, Massachusetts, comprises two elementary schools and one middle school in Whitman, and two elementary schools and one

---

[1] For the purpose of this summary judgment motion, the factual summary presented herein consists of undisputed facts and disputed facts construed in the light most favorable to Lewis, the non-moving party.  The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).  Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party - even if uncontradicted - that the jury would be free to disbelieve.  See id.

middle school in Hanson.  Def.'s Mem. 1.[2]  Ernest Sandland

("Sandland") is the director of facilities and is responsible for

maintaining the buildings, grounds, and equipment of the School

District.  <u>Id.</u> at 2.  As part of his duties, Sandland supervises,

evaluates, and trains the custodial and groundskeeping staff.

<u>Id.</u>

Lewis, currently age fifty-nine, began working for the

School District as a custodian in September 1999 in various

schools within the district.  Pl.'s Rule 56.1 Resp. Def.'s

Concise Statement Material Facts ("Pl.'s SOF") ¶¶ 1, 2, ECF No.

24.  Lewis's main responsibility as a custodian was to clean all

components of the school facilities, including classrooms.  <u>Id.</u>

at 2.  For work-related purposes, Lewis need use the computer

only to check emails.  <u>Id.</u>  In 2006, Lewis falsely charged the

School District for overtime pay, resulting in a two-day

suspension.  Def.'s Mem. 3.  Lewis acknowledged his wrongful act

in a letter to Sandland, dated May 31, 2006.  <u>See</u> Pl.'s SOF, Ex.

A, Dep. James F. Lewis ("Lewis Dep.") 28:17-30:5, May 23, 2011

---

[2] The School District did not submit a statement of material
facts pursuant to Local Rule 56.1, but instead incorporated a
"concise statement of material facts" into its memorandum in
support of its motion for summary judgment.  Def.'s Mem. 1-9.  As
a result, Lewis's Rule 56.1 response does not address every fact
stipulated by the School District.  <u>See</u> Pl.'s Rule 56.1 Resp.
Def.'s Concise Statement Material Facts ("Pl.'s SOF"), ECF No.
24.  For the sake of a coherent narrative, the Court cites to the
School District's memorandum for general undisputed factual
background.

(verifying the contents and authorship of the May 31, 2006, letter to Sandland).

In the summer of 2008, Lewis was assigned to a shift at the Duval Elementary School from the hours of 7:00 a.m. to 2:30 p.m. Pl.'s SOF ¶ 6.  During this time, Lewis occasionally used his work computer for personal purposes.  Id. ¶ 7.  In September 2008, Lewis received a letter from Sandland notifying him of a five-day suspension, along with a request to pay $331.92 for the theft of time and use of the School District computer during his regular and overtime custodial shifts.  Id. ¶ 8.  Lewis was found to have used his computer for personal purposes over thirty times in a two-month period.  Lewis Dep. 46:18-22.

After this suspension, Lewis was reassigned to a float custodian position, which required him to work on a rotating basis at four elementary schools.  Pl.'s SOF ¶ 3.  As a result, Lewis took on more responsibilities, see id. ¶¶ 19-20, and had less opportunities for overtime work than previously were available, see id. ¶ 23.

After approximately one year in the float position, Lewis was transferred to a high school for approximately two years before coming back to work at the Duval Elementary School.  Id. ¶ 4.  For the 2008-2009 school year, Lewis received an adverse performance evaluation from Sandland, rating Lewis's performance

in some respects sub-par.  <u>See</u> <u>id.</u>, Ex. Z, Custodial-Maintenance Employee Evaluation, ECF No. 24-6.

Throughout his employment, Lewis observed other employees using their work computers for personal purposes with no disciplinary action taken against them.  Pl.'s SOF ¶¶ 17, 18, 21, 22.  A younger employee, Lead Custodian Sandra Davis ("Davis"), allegedly used her work computer for personal use, abused overtime and sick time, and failed to sign in and out of the office electronically for her shifts.  <u>Id.</u> ¶¶ 11, 16.  To show that Davis was using her work computer for personal purposes, Lewis downloaded information from Davis's Facebook "Wall" and shared it with various School District officials.  <u>Id.</u> ¶¶ 12, 14. The head of technology, Craig Finley, generated a computer use report regarding Davis's use of her work computer, <u>id.</u> ¶ 33, which showed that Davis had used her work computer during work hours for personal purposes.  <u>Id.</u> ¶ 34.  Davis, like Lewis, was subsequently disciplined for violating the Computer Use Policy. <u>Id.</u> ¶ 36.  Unlike Lewis, however, Davis was not suspended; she received only a reprimand letter that could be removed from her personnel file after six months pending good behavior.  <u>Id.</u> ¶ 45. Davis was not required to pay restitution.  <u>Id.</u> ¶ 43.

Lewis maintains that the School District engaged in a systematic process of harassing, disciplining, and terminating employees who are over forty years of age.  <u>Id.</u> ¶ 25.  Lewis

supports this assertion with email correspondence by another employee of the School District, William Wisnaskas ("Wisnaskas"), in which Wisnaskas stated:

> Ernest Sandland is a bully who endeavors to use his position to discourage, torment, intimidate and frighten others through the use of threats for his own gain . . . . A further concern is the appearance of ongoing activities to drive out older operations employees in favor of younger employees.

Id., Ex. I, Email from Bill Wisnaskas to John McEwan et al. (Aug. 24, 2007) ("Wisnaskas Email"), ECF No. 24-5.  Robert Stewart ("Stewart"), another former employee, referred in a handwritten note to Sandland's "bullish" manner in speaking to him in front of the school staff.  Pl.'s SOF, Ex. J, Letter from Robert Stewart (July 15, 2008) ("Stewart Letter"), ECF No. 24-5.

On May 31, 2011, the School District voted to outsource its custodial and maintenance work.  See Def.'s Mem., Ex. 46, Whitman-Hanson Regional School Committee Regular Meeting, Minutes of May 31, 2011, ECF No. 17-14.  Thus, by the end of the 2010-2011 school year, Lewis, as well as other union custodial and maintenance staff members, was no longer employed by the School District.  See id.

## C.   Federal Jurisdiction

This case arises under the laws of the United States, specifically the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1).  As such, this Court has jurisdiction over the action pursuant to 42 U.S.C. § 1331.

## II.   ANALYSIS

### A.   Legal Standard

Both the ADEA and the Massachusetts Fair Employment Practices Act prohibit employers from discriminating against employees on the basis of their age.  See 29 U.S.C. § 623(a)(1); Mass. Gen. Laws ch. 151B, § 4(1B).  When there is no direct evidence of discrimination, as is the case here, the burden of proof for cases brought pursuant to both statutes is determined according to the three-stage framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See McKenzie v. Brigham & Women's Hosp., 405 Mass. 432, 434-35 (1989) (applying the McDonnell Douglas framework to claims brought under Massachusetts General Laws chapter 151B).

In the first stage, Lewis "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." McDonnell Douglas, 411 U.S. at 802.  Generally, a plaintiff must show that "(i) he is a member of a protected class; (ii) he was qualified for the job; (iii) the employer took an adverse employment action against him; and (iv) the position remained open or was filled by a person with similar qualifications." Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)).  As this Court has previously held, however, "the essential elements of a prima facie case necessarily vary

7

depending on the job involved and the decision to be made."
Lavalley v. Quebecor World Book Servs. LLC, 315 F. Supp. 2d 136,
144 (D. Mass. 2004) (citation omitted) (internal quotation marks
omitted).  The fourth factor - that the position remained open or
was filled by a person with similar qualifications - does not fit
neatly within the framework of this case.  This Court will
therefore adapt the multi-factor test to require Lewis to show
the following: (1) he is a member of a protected class; (2) he
was qualified for the job; and (3) he suffered an adverse
employment action under circumstances giving rise to an inference
of unlawful discrimination.  See, e.g., id. at 144-45 (citing
numerous federal and state cases with similar formulations).

Once Lewis has created a presumption of unlawful
discrimination by establishing his prima facie case, the burden
of going forward shifts to the School District, in the second
stage of the analysis, "to articulate a legitimate,
non-discriminatory reason for its employment decision and to
produce credible evidence to show that the reason advanced was
the real reason."  Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100,
105 (1st Cir. 2005) (citing McDonnell Douglas, 411 U.S. at 802).
If the School District proffers such evidence, the presumption of
unlawful discrimination vanishes.  Id.

In the third and final stage of the analysis, Lewis is
"afforded a fair opportunity to show that [the School District's]

stated reason for [Lewis's adverse treatment] was in fact pretext." McDonnell Douglas, 411 U.S. at 804. That is to say, Lewis must show there was "more than an unusual act; [pretext] means something worse than a business error; [it] means deceit used to cover one's tracks." See Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000)).

"At the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." Quinones v. Buick, 436 F.3d 284, 289-90 (1st Cir. 2006) (internal quotation marks omitted).

**B.  Lewis's Prima Facie Case**

It is undisputed that Lewis satisfies the first element of a prima facie case: he was over forty years old at all relevant times, see Compl. ¶ 17; Def.'s Answer ¶ 17, the minimum age for protection under the ADEA, see 29 U.S.C. § 631(a). With respect to the remaining elements, however, the School District alleges that Lewis cannot establish a prima facie case because (1) he failed to meet the School District's legitimate job expectations, (2) he did not suffer an adverse action, and (3) he cannot show

that the School District replaced him with a similar or less
qualified younger person.  Def.'s Mem. 12.

### 1.   Lewis's Job Performance

The School District argues that Lewis cannot establish the
second element of his prima facie case because he was not
satisfactorily performing his job.  Def.'s Mem. 12.  The School
District has mischaracterized the second element of the <u>McDonnell
Douglas</u> test, however, by suggesting that Lewis must show at this
stage that he was performing his job in a satisfactory manner.

Whether Lewis's performance was sub-par is an issue for the
second stage of the <u>McDonnell Douglas</u> test, which addresses the
question of whether the employer had a legitimate
nondiscriminatory reason for the alleged adverse action.
<u>McDonnell Douglas</u>, 411 U.S. at 802.  At the initial stage, the
proper inquiry is whether Lewis was objectively qualified to
perform the job.  <u>Anderson</u> v. <u>Potter</u>, 723 F. Supp. 2d 368, 371
(D. Mass. 2010).

Here, Lewis alleged – and the School District conceded –
that Lewis was qualified to perform the essential functions of
his job.  Compl. ¶ 18; Def.'s Answer ¶ 18.  Thus, Lewis has
established this element of his prima facie case.

>           **2.    Adverse Employment Action Under Circumstances
>                   Giving Rise to an Inference of Unlawful
>                   Discrimination**

The School District argues that Lewis's re-assignment to a
float custodian position was not an adverse employment action.
Def.'s Mem. 12-13.  The School District contends that Lewis
enjoyed the exact same wages, benefits, and other terms and
conditions of employment as the other custodians, and that the
float position was simply an assignment within the custodian
position, not a demotion.  Id. at 2.

Lewis argues that his re-assignment did, in fact, qualify as
a demotion.  Pl.'s Opp'n 2.  He argues that after being
transferred to the float custodian position, he was required to
alternate his duties among four elementary schools and to take on
additional responsibilities.  Pl.'s SOF ¶¶ 3, 19.  Lewis further
contends that in the float position, he had to share equipment
and transport the equipment from one floor to another, which
hindered his ability to complete all of his assigned tasks.  Id.
¶ 20.  At times, he alleges he had to work without proper
equipment, Pl.'s Opp'n 4, and was denied direct access to the
custodial lockers, Compl. ¶ 12.

In determining whether Lewis's allegations constitute an
adverse employment action, this Court is instructed by Gu v.
Boston Police Department, 312 F.3d 6 (1st Cir. 2002), a
retaliation case.  In Gu, the First Circuit held that an adverse

employment action "must materially change the conditions of
plaintiff's employ." <u>Id.</u> at 14.  Material changes include
"demotions, disadvantageous transfers or assignments, refusals to
promote, unwarranted negative job evaluations, and toleration of
harassment by other employees." <u>Id.</u>  Here, Lewis's allegations
that he was required to alternate his duties among four
elementary schools and to take on responsibilities beyond those
he had previously worked sufficiently establish that he suffered
a demotion or, at the very least, a disadvantageous transfer.

Lewis also sufficiently establishes an inference of unlawful
discrimination based on the circumstances of his adverse
treatment.  <u>See</u> <u>LaValley</u>, 315 F. Supp. 2d at 144-45.  Lewis
argues that he observed other employees using their work
computers for personal purposes, while receiving no disciplinary
action.  Pl.'s SOF ¶ 17.  He further alleges that Davis used her
work computer for personal use, abused her overtime and sick
time, and failed to sign in and out of the office electronically,
all while receiving much less severe disciplinary action.  <u>Id.</u> ¶¶
16, 37.  Given the minimal burden allocated to Lewis at this
stage, this Court will assume a prima facie showing "in order to
move on to the real issues in the case." <u>Garcia</u> v. <u>Bristol-Myers</u>
<u>Squibb Co.</u>, 535 F.3d 23, 31 (1st Cir. 2008).[3]

_____

[3] The School District argues that Lewis fails to establish a
prima facie case because he cannot prove that the School District
replaced him with a similarly qualified (or less qualified)

**C.  The School District's Legitimate, Non-Discriminatory Reason**

The burden now shifts to the School District to produce evidence that the adverse employment actions - i.e., the five-day suspension and Lewis's assignment to the float position - were taken for a legitimate non-discriminatory reason.  See Tobin, 433 F.3d at 105.

Lewis concedes in his opposition brief that the School District met its burden of production in articulating a non-discriminatory reason for its "decision to discipline him" - namely, that his computer use for personal reasons was a theft of time.  Pl.'s Opp'n 9-10.  It is unclear from the context of Lewis's concession, however, whether it is meant to concede a legitimate reason only for the five-day suspension or for the "demotion" to float custodian as well.  In an exercise of caution, this Court will assume that Lewis conceded the point only as to the five-day suspension.  Thus, the burden remains on the School District to produce evidence as to its decision to assign Lewis to the float position.

---

younger individual.  Def.'s Mem. 18-19.  As this Court discussed above, however, the fourth element of the McDonnell Douglas analysis does not fit squarely in the circumstances of this case. See supra at Section II.A.  Rather, under the framework adopted by this Court, Lewis must show that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.  See LaValley, 315 F. Supp. 2d at 144-45.  Lewis meets his burden as to this element.

As a preliminary matter, the School District argues that
Lewis's assignment to the float position was merely a re-
assignment within the custodian position, not a demotion, and it
entitled Lewis to the same wages, benefits, and terms and
conditions of employment as the other custodians.  Def.'s Mem. 2;
see also Lewis Dep. 21:7-22:3 (acknowledging that these aspects
of his job remained the same).  Even if the assignment did
constitute a demotion, the School District has submitted evidence
that the Duval Elementary School, including Lewis's assigned
area, was constantly in a dirty condition, spurring numerous
complaints from the teaching staff and school principal.  See
id., Ex. 10, Aff. Frances Botelho-Hoeg ("Aff. Hoeg") ¶ 4, ECF No.
17-7 (noting that some of the bathrooms smelled of urine, the
hallways were not thoroughly washed or buffed, and the glass
windows contained fingerprints from the previous week); see also
id., Ex. 8, Aff. Ernest Sandland ("Aff. Sandland") ¶ 8, ECF No.
17-7.  Moreover, Lewis failed to heed warnings by Sandland that
his work was sub-par, and was caught on several occasions playing
games on the computer or reading a book during his shift.  Aff.
Sandland ¶ 9.

This Court therefore holds that the School District has
produced evidence, "which, if believed by the trier of fact,
would support a finding that unlawful discrimination was not the
cause of [Lewis's assignment to the float position]."  St. Mary's

Honor Ctr., 509 U.S. at 507.  The evidence credibly supports
legitimate, non-discriminatory reasons for assigning Lewis to a
floating position among four schools, rather than allowing him to
remain sole custodian over an area which he continually failed to
maintain in an acceptable manner.  The inference of
discrimination established in Lewis's prima facie case thus
disappears.  See Kosereis, 331 F.3d at 213.

   **D.   Pretext**

   At this stage, Lewis must produce evidence from which it
could be inferred that the School District's asserted reason for
Lewis's demotion was only a pretext, and that the School District
acted out of a discriminatory motive.  Mesnick v. General Elec.
Co., 950 F.2d 816, 825 (1st Cir. 1991).  This evidence "must be
sufficient for a reasonable fact finder to infer that the [School
District's] decision was motivated by discriminatory animus."
Id.

   A plaintiff can demonstrate pretext in a variety of ways.
One such way is to produce evidence that the plaintiff was
treated differently than similarly situated employees.  Kosereis,
331 F.3d at 214.  In making such a showing, the burden is on the
plaintiff to present evidence that the other employees were in
fact "similarly situated to him in all relevant respects."
Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999).
While the comparison cases "need not be perfect replicas, [the

employees] must closely resemble one another in respect to relevant facts and circumstances." Id.

Lewis particularizes his disparate treatment allegations only with respect to Davis. He alleges that Davis violated the Computer Use Policy, yet was not suspended or required to pay restitution. Pl.'s SOF ¶ 36. Rather, she was given a written reprimand that could be removed from her personnel file after six months pending good behavior. Id. ¶¶ 36, 43, 45. In contrast, Lewis was suspended for five days, demoted to a float custodian position, and asked to pay restitution of $331.92. Id. ¶¶ 3, 8, 19, 23.

Lewis makes no attempt, however, to show that Davis and Lewis "closely resemble one another in respect to relevant facts and circumstances." Conward, 171 F.3d at 20. Indeed, Lewis acknowledges that Davis was the lead custodian, to whom all other custodians in that building (including Lewis) reported. Id. ¶ 31. Further, Lewis states that Davis had her own office in the high school adjacent to Sandland, the custodian manager. Id. ¶ 32.

In his deposition, which Lewis attached as an exhibit to his opposition brief, Lewis admits that he had been previously suspended for two days and required to pay restitution for falsely charging overtime hours that he did not work. Lewis Dep. 28:22-29:7. Lewis does not argue or present evidence that Davis

16

had ever been disciplined before her Computer Use Policy
violation.  Lewis also admits in his deposition that the computer
use report showed that he used the computer for personal purposes
on more than thirty occasions within a two-month period.  <u>Id.</u>
46:18-22.  Lewis does not present evidence as to the extent and
amount of Davis's personal use of the computer, other than
conclusory unsubstantiated statements that she used the computer
"as much, if not more" than he did.  <u>Id.</u> 72:19-21.  As such,
Lewis has not presented evidence from which a fact-finder could
reasonably infer that Lewis, a custodian who had been previously
suspended for other disciplinary matters and charged with a
proven amount of personal computer use over a set period, was
similarly situated to Davis, the lead custodian who had never
before been disciplined and whose amount of personal computer use
is indeterminable on the record at hand.

Lewis also argues that he witnessed other custodians under
the age of forty committing worse acts than he did, with no
repercussions.  Pl.'s SOF ¶ 21.  He argues that the School
District systematically harassed, disciplined and terminated
older employees, citing to two letters from former colleagues,
one which noted "the appearance of ongoing activities to drive
out older operations employees in favor of younger employees,"
Wisnaskas Email 1, and the other which stated that Sandland had a
"bullish" manner, Stewart Letter 1.  Yet, such conclusory and

unsubstantiated allegations are insufficient to meet Lewis's burden at this stage. See Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) ("A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.").

Therefore, after viewing all the facts in the light most favorable to Lewis, this Court concludes that Lewis has failed to carry his burden under McDonnell Douglas to demonstrate pretext. Lewis has not produced "specific facts sufficient to deflect the swing of the summary judgment scythe." Ahern, 629 F.3d at 54. The Court acknowledges the First Circuit's admonition to be especially cautious in granting summary judgment when pretext is at issue. See Harrington v. Aggregate Indus. Ne. Region, Inc., No. 11-1511, 2012 WL 372708, at *6 (1st Cir. Feb. 7, 2012) (citing Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998)). Nevertheless, the evidence Lewis has produced regarding pretext is "so weak" that summary judgment is appropriate. See Kosereis, 331 F.3d at 216 (affirming the district court's grant of summary judgment where the plaintiff failed to show that the other employees were so similarly situated that their disparate treatment signaled pretext).

III.   CONCLUSION

    For the foregoing reasons, this Court GRANTS the School

District's motion for summary judgment.


SO ORDERED.


                                        /s/ William G. Young

                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE