```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                              )
JAMES F. LEWIS,               )
                              )
            Plaintiff,        )
                              )      CIVIL ACTION
      v.                      )      NO. 10-11934-WGY
                              )
WHITMAN-HANSON REGIONAL SCHOOL)
DISTRICT,                     )
                              )
            Defendant.        )
                              )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    February 13, 2012

## I. INTRODUCTION

James F. Lewis ("Lewis") brought this action against Whitman-Hanson Regional School District ("the School District") alleging he was disparately disciplined and demoted during his employment based upon his age, in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 623(a)(1), and the Massachusetts Fair Employment Practices Act, Massachusetts General Laws chapter 151B, § 4(1B). The School District now moves for summary judgment.

A.  **Procedural Posture**

Lewis filed this suit on November 10, 2010. Compl. Request Jury Trial ("Compl."), ECF No. 1. The School District filed an answer to Lewis's complaint on January 19, 2011, Def.'s Answer Compl. Demand Jury Trial, ECF No. 3, and subsequently moved for summary judgment on August 17, 2011, Def. Whitman-Hanson Regional School District's Mot. Summ. J., ECF No. 16.; Def. Whitman-Hanson Regional School District's Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 17. On September 30, 2011, Lewis opposed the motion. Opp'n Pl. James F. Lewis, Def. Whitman-Hanson Regional School District's Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 23. On October 11, 2011, the School District filed a reply. Def. Whitman-Hanson Regional School District's Reply Opp'n Mot. Summ. J. ("Def.'s Reply"), ECF No. 26.

B.  **Facts in the Light Most Favorable to Lewis**[1]

The School District, serving the towns of Whitman and Hanson, Massachusetts, comprises two elementary schools and one middle school in Whitman, and two elementary schools and one

---

[1] For the purpose of this summary judgment motion, the factual summary presented herein consists of undisputed facts and disputed facts construed in the light most favorable to Lewis, the non-moving party. The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party – even if uncontradicted – that the jury would be free to disbelieve. See id.

middle school in Hanson. Def.'s Mem. 1.[2] Ernest Sandland ("Sandland") is the director of facilities and is responsible for maintaining the buildings, grounds, and equipment of the School District. Id. at 2. As part of his duties, Sandland supervises, evaluates, and trains the custodial and groundskeeping staff. Id.

Lewis, currently age fifty-nine, began working for the School District as a custodian in September 1999 in various schools within the district. Pl.'s Rule 56.1 Resp. Def.'s Concise Statement Material Facts ("Pl.'s SOF") ¶¶ 1, 2, ECF No. 24. Lewis's main responsibility as a custodian was to clean all components of the school facilities, including classrooms. Id. at 2. For work-related purposes, Lewis need use the computer only to check emails. Id. In 2006, Lewis falsely charged the School District for overtime pay, resulting in a two-day suspension. Def.'s Mem. 3. Lewis acknowledged his wrongful act in a letter to Sandland, dated May 31, 2006. See Pl.'s SOF, Ex. A, Dep. James F. Lewis ("Lewis Dep.") 28:17-30:5, May 23, 2011

---

[2] The School District did not submit a statement of material facts pursuant to Local Rule 56.1, but instead incorporated a "concise statement of material facts" into its memorandum in support of its motion for summary judgment. Def.'s Mem. 1-9. As a result, Lewis's Rule 56.1 response does not address every fact stipulated by the School District. See Pl.'s Rule 56.1 Resp. Def.'s Concise Statement Material Facts ("Pl.'s SOF"), ECF No. 24. For the sake of a coherent narrative, the Court cites to the School District's memorandum for general undisputed factual background.

3

(verifying the contents and authorship of the May 31, 2006, letter to Sandland).

In the summer of 2008, Lewis was assigned to a shift at the Duval Elementary School from the hours of 7:00 a.m. to 2:30 p.m. Pl.'s SOF ¶ 6.  During this time, Lewis occasionally used his work computer for personal purposes.  Id. ¶ 7.  In September 2008, Lewis received a letter from Sandland notifying him of a five-day suspension, along with a request to pay $331.92 for the theft of time and use of the School District computer during his regular and overtime custodial shifts.  Id. ¶ 8.  Lewis was found to have used his computer for personal purposes over thirty times in a two-month period.  Lewis Dep. 46:18-22.

After this suspension, Lewis was reassigned to a float custodian position, which required him to work on a rotating basis at four elementary schools.  Pl.'s SOF ¶ 3.  As a result, Lewis took on more responsibilities, see id. ¶¶ 19-20, and had less opportunities for overtime work than previously were available, see id. ¶ 23.

After approximately one year in the float position, Lewis was transferred to a high school for approximately two years before coming back to work at the Duval Elementary School.  Id. ¶ 4.  For the 2008-2009 school year, Lewis received an adverse performance evaluation from Sandland, rating Lewis's performance

in some respects sub-par. See id., Ex. Z, Custodial-Maintenance Employee Evaluation, ECF No. 24-6.

Throughout his employment, Lewis observed other employees using their work computers for personal purposes with no disciplinary action taken against them. Pl.'s SOF ¶¶ 17, 18, 21, 22. A younger employee, Lead Custodian Sandra Davis ("Davis"), allegedly used her work computer for personal use, abused overtime and sick time, and failed to sign in and out of the office electronically for her shifts. Id. ¶¶ 11, 16. To show that Davis was using her work computer for personal purposes, Lewis downloaded information from Davis's Facebook "Wall" and shared it with various School District officials. Id. ¶¶ 12, 14. The head of technology, Craig Finley, generated a computer use report regarding Davis's use of her work computer, id. ¶ 33, which showed that Davis had used her work computer during work hours for personal purposes. Id. ¶ 34. Davis, like Lewis, was subsequently disciplined for violating the Computer Use Policy. Id. ¶ 36. Unlike Lewis, however, Davis was not suspended; she received only a reprimand letter that could be removed from her personnel file after six months pending good behavior. Id. ¶ 45. Davis was not required to pay restitution. Id. ¶ 43.

Lewis maintains that the School District engaged in a systematic process of harassing, disciplining, and terminating employees who are over forty years of age. Id. ¶ 25. Lewis

5

supports this assertion with email correspondence by another employee of the School District, William Wisnaskas ("Wisnaskas"), in which Wisnaskas stated:

> Ernest Sandland is a bully who endeavors to use his position to discourage, torment, intimidate and frighten others through the use of threats for his own gain . . . . A further concern is the appearance of ongoing activities to drive out older operations employees in favor of younger employees.

Id., Ex. I, Email from Bill Wisnaskas to John McEwan et al. (Aug. 24, 2007) ("Wisnaskas Email"), ECF No. 24-5. Robert Stewart ("Stewart"), another former employee, referred in a handwritten note to Sandland's "bullish" manner in speaking to him in front of the school staff. Pl.'s SOF, Ex. J, Letter from Robert Stewart (July 15, 2008) ("Stewart Letter"), ECF No. 24-5.

On May 31, 2011, the School District voted to outsource its custodial and maintenance work. See Def.'s Mem., Ex. 46, Whitman-Hanson Regional School Committee Regular Meeting, Minutes of May 31, 2011, ECF No. 17-14. Thus, by the end of the 2010-2011 school year, Lewis, as well as other union custodial and maintenance staff members, was no longer employed by the School District. See id.

**C. Federal Jurisdiction**

This case arises under the laws of the United States, specifically the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1). As such, this Court has jurisdiction over the action pursuant to 42 U.S.C. § 1331.

## II. ANALYSIS

### A. Legal Standard

Both the ADEA and the Massachusetts Fair Employment Practices Act prohibit employers from discriminating against employees on the basis of their age. See 29 U.S.C. § 623(a)(1); Mass. Gen. Laws ch. 151B, § 4(1B). When there is no direct evidence of discrimination, as is the case here, the burden of proof for cases brought pursuant to both statutes is determined according to the three-stage framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McKenzie v. Brigham & Women's Hosp., 405 Mass. 432, 434-35 (1989) (applying the McDonnell Douglas framework to claims brought under Massachusetts General Laws chapter 151B).

In the first stage, Lewis "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." McDonnell Douglas, 411 U.S. at 802. Generally, a plaintiff must show that "(i) he is a member of a protected class; (ii) he was qualified for the job; (iii) the employer took an adverse employment action against him; and (iv) the position remained open or was filled by a person with similar qualifications." Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)). As this Court has previously held, however, "the essential elements of a prima facie case necessarily vary

7

depending on the job involved and the decision to be made." Lavalley v. Quebecor World Book Servs. LLC, 315 F. Supp. 2d 136, 144 (D. Mass. 2004) (citation omitted) (internal quotation marks omitted). The fourth factor - that the position remained open or was filled by a person with similar qualifications - does not fit neatly within the framework of this case. This Court will therefore adapt the multi-factor test to require Lewis to show the following: (1) he is a member of a protected class; (2) he was qualified for the job; and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. See, e.g., id. at 144-45 (citing numerous federal and state cases with similar formulations).

Once Lewis has created a presumption of unlawful discrimination by establishing his prima facie case, the burden of going forward shifts to the School District, in the second stage of the analysis, "to articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005) (citing McDonnell Douglas, 411 U.S. at 802). If the School District proffers such evidence, the presumption of unlawful discrimination vanishes. Id.

In the third and final stage of the analysis, Lewis is "afforded a fair opportunity to show that [the School District's]

stated reason for [Lewis's adverse treatment] was in fact pretext." McDonnell Douglas, 411 U.S. at 804. That is to say, Lewis must show there was "more than an unusual act; [pretext] means something worse than a business error; [it] means deceit used to cover one's tracks." See Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000)).

"At the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." Quinones v. Buick, 436 F.3d 284, 289-90 (1st Cir. 2006) (internal quotation marks omitted).

**B. Lewis's Prima Facie Case**

It is undisputed that Lewis satisfies the first element of a prima facie case: he was over forty years old at all relevant times, see Compl. ¶ 17; Def.'s Answer ¶ 17, the minimum age for protection under the ADEA, see 29 U.S.C. § 631(a). With respect to the remaining elements, however, the School District alleges that Lewis cannot establish a prima facie case because (1) he failed to meet the School District's legitimate job expectations, (2) he did not suffer an adverse action, and (3) he cannot show

9

that the School District replaced him with a similar or less qualified younger person.  Def.'s Mem. 12.

### 1. Lewis's Job Performance

The School District argues that Lewis cannot establish the second element of his prima facie case because he was not satisfactorily performing his job.  Def.'s Mem. 12.  The School District has mischaracterized the second element of the McDonnell Douglas test, however, by suggesting that Lewis must show at this stage that he was performing his job in a satisfactory manner.

Whether Lewis's performance was sub-par is an issue for the second stage of the McDonnell Douglas test, which addresses the question of whether the employer had a legitimate nondiscriminatory reason for the alleged adverse action. McDonnell Douglas, 411 U.S. at 802.  At the initial stage, the proper inquiry is whether Lewis was objectively qualified to perform the job.  Anderson v. Potter, 723 F. Supp. 2d 368, 371 (D. Mass. 2010).

Here, Lewis alleged - and the School District conceded - that Lewis was qualified to perform the essential functions of his job.  Compl. ¶ 18; Def.'s Answer ¶ 18.  Thus, Lewis has established this element of his prima facie case.

### 2. Adverse Employment Action Under Circumstances Giving Rise to an Inference of Unlawful Discrimination

The School District argues that Lewis's re-assignment to a float custodian position was not an adverse employment action. Def.'s Mem. 12-13. The School District contends that Lewis enjoyed the exact same wages, benefits, and other terms and conditions of employment as the other custodians, and that the float position was simply an assignment within the custodian position, not a demotion. Id. at 2.

Lewis argues that his re-assignment did, in fact, qualify as a demotion. Pl.'s Opp'n 2. He argues that after being transferred to the float custodian position, he was required to alternate his duties among four elementary schools and to take on additional responsibilities. Pl.'s SOF ¶¶ 3, 19. Lewis further contends that in the float position, he had to share equipment and transport the equipment from one floor to another, which hindered his ability to complete all of his assigned tasks. Id. ¶ 20. At times, he alleges he had to work without proper equipment, Pl.'s Opp'n 4, and was denied direct access to the custodial lockers, Compl. ¶ 12.

In determining whether Lewis's allegations constitute an adverse employment action, this Court is instructed by Gu v. Boston Police Department, 312 F.3d 6 (1st Cir. 2002), a retaliation case. In Gu, the First Circuit held that an adverse

11

employment action "must materially change the conditions of plaintiff's employ." Id. at 14. Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. Here, Lewis's allegations that he was required to alternate his duties among four elementary schools and to take on responsibilities beyond those he had previously worked sufficiently establish that he suffered a demotion or, at the very least, a disadvantageous transfer.

Lewis also sufficiently establishes an inference of unlawful discrimination based on the circumstances of his adverse treatment. See LaValley, 315 F. Supp. 2d at 144-45. Lewis argues that he observed other employees using their work computers for personal purposes, while receiving no disciplinary action. Pl.'s SOF ¶ 17. He further alleges that Davis used her work computer for personal use, abused her overtime and sick time, and failed to sign in and out of the office electronically, all while receiving much less severe disciplinary action. Id. ¶¶ 16, 37. Given the minimal burden allocated to Lewis at this stage, this Court will assume a prima facie showing "in order to move on to the real issues in the case." Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008).[3]

---

[3] The School District argues that Lewis fails to establish a prima facie case because he cannot prove that the School District replaced him with a similarly qualified (or less qualified)

12

**C. The School District's Legitimate, Non-Discriminatory Reason**

The burden now shifts to the School District to produce evidence that the adverse employment actions - i.e., the five-day suspension and Lewis's assignment to the float position - were taken for a legitimate non-discriminatory reason. See Tobin, 433 F.3d at 105.

Lewis concedes in his opposition brief that the School District met its burden of production in articulating a non-discriminatory reason for its "decision to discipline him" - namely, that his computer use for personal reasons was a theft of time. Pl.'s Opp'n 9-10. It is unclear from the context of Lewis's concession, however, whether it is meant to concede a legitimate reason only for the five-day suspension or for the "demotion" to float custodian as well. In an exercise of caution, this Court will assume that Lewis conceded the point only as to the five-day suspension. Thus, the burden remains on the School District to produce evidence as to its decision to assign Lewis to the float position.

---

younger individual. Def.'s Mem. 18-19. As this Court discussed above, however, the fourth element of the McDonnell Douglas analysis does not fit squarely in the circumstances of this case. See supra at Section II.A. Rather, under the framework adopted by this Court, Lewis must show that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. See LaValley, 315 F. Supp. 2d at 144-45. Lewis meets his burden as to this element.

13

As a preliminary matter, the School District argues that Lewis's assignment to the float position was merely a re-assignment within the custodian position, not a demotion, and it entitled Lewis to the same wages, benefits, and terms and conditions of employment as the other custodians. Def.'s Mem. 2; see also Lewis Dep. 21:7-22:3 (acknowledging that these aspects of his job remained the same). Even if the assignment did constitute a demotion, the School District has submitted evidence that the Duval Elementary School, including Lewis's assigned area, was constantly in a dirty condition, spurring numerous complaints from the teaching staff and school principal. See id., Ex. 10, Aff. Frances Botelho-Hoeg ("Aff. Hoeg") ¶ 4, ECF No. 17-7 (noting that some of the bathrooms smelled of urine, the hallways were not thoroughly washed or buffed, and the glass windows contained fingerprints from the previous week); see also id., Ex. 8, Aff. Ernest Sandland ("Aff. Sandland") ¶ 8, ECF No. 17-7. Moreover, Lewis failed to heed warnings by Sandland that his work was sub-par, and was caught on several occasions playing games on the computer or reading a book during his shift. Aff. Sandland ¶ 9.

This Court therefore holds that the School District has produced evidence, "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of [Lewis's assignment to the float position]." St. Mary's

14

Honor Ctr., 509 U.S. at 507. The evidence credibly supports legitimate, non-discriminatory reasons for assigning Lewis to a floating position among four schools, rather than allowing him to remain sole custodian over an area which he continually failed to maintain in an acceptable manner. The inference of discrimination established in Lewis's prima facie case thus disappears. See Kosereis, 331 F.3d at 213.

### D. Pretext

At this stage, Lewis must produce evidence from which it could be inferred that the School District's asserted reason for Lewis's demotion was only a pretext, and that the School District acted out of a discriminatory motive. Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991). This evidence "must be sufficient for a reasonable fact finder to infer that the [School District's] decision was motivated by discriminatory animus." Id.

A plaintiff can demonstrate pretext in a variety of ways. One such way is to produce evidence that the plaintiff was treated differently than similarly situated employees. Kosereis, 331 F.3d at 214. In making such a showing, the burden is on the plaintiff to present evidence that the other employees were in fact "similarly situated to him in all relevant respects." Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999). While the comparison cases "need not be perfect replicas, [the

15

employees] must closely resemble one another in respect to relevant facts and circumstances." Id.

Lewis particularizes his disparate treatment allegations only with respect to Davis. He alleges that Davis violated the Computer Use Policy, yet was not suspended or required to pay restitution. Pl.'s SOF ¶ 36. Rather, she was given a written reprimand that could be removed from her personnel file after six months pending good behavior. Id. ¶¶ 36, 43, 45. In contrast, Lewis was suspended for five days, demoted to a float custodian position, and asked to pay restitution of $331.92. Id. ¶¶ 3, 8, 19, 23.

Lewis makes no attempt, however, to show that Davis and Lewis "closely resemble one another in respect to relevant facts and circumstances." Conward, 171 F.3d at 20. Indeed, Lewis acknowledges that Davis was the lead custodian, to whom all other custodians in that building (including Lewis) reported. Id. ¶ 31. Further, Lewis states that Davis had her own office in the high school adjacent to Sandland, the custodian manager. Id. ¶ 32.

In his deposition, which Lewis attached as an exhibit to his opposition brief, Lewis admits that he had been previously suspended for two days and required to pay restitution for falsely charging overtime hours that he did not work. Lewis Dep. 28:22-29:7. Lewis does not argue or present evidence that Davis

16

had ever been disciplined before her Computer Use Policy violation.  Lewis also admits in his deposition that the computer use report showed that he used the computer for personal purposes on more than thirty occasions within a two-month period.  Id. 46:18-22.  Lewis does not present evidence as to the extent and amount of Davis's personal use of the computer, other than conclusory unsubstantiated statements that she used the computer "as much, if not more" than he did.  Id. 72:19-21.  As such, Lewis has not presented evidence from which a fact-finder could reasonably infer that Lewis, a custodian who had been previously suspended for other disciplinary matters and charged with a proven amount of personal computer use over a set period, was similarly situated to Davis, the lead custodian who had never before been disciplined and whose amount of personal computer use is indeterminable on the record at hand.

Lewis also argues that he witnessed other custodians under the age of forty committing worse acts than he did, with no repercussions.  Pl.'s SOF ¶ 21.  He argues that the School District systematically harassed, disciplined and terminated older employees, citing to two letters from former colleagues, one which noted "the appearance of ongoing activities to drive out older operations employees in favor of younger employees," Wisnaskas Email 1, and the other which stated that Sandland had a "bullish" manner, Stewart Letter 1.  Yet, such conclusory and

17

unsubstantiated allegations are insufficient to meet Lewis's burden at this stage. See Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) ("A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.").

Therefore, after viewing all the facts in the light most favorable to Lewis, this Court concludes that Lewis has failed to carry his burden under McDonnell Douglas to demonstrate pretext. Lewis has not produced "specific facts sufficient to deflect the swing of the summary judgment scythe." Ahern, 629 F.3d at 54. The Court acknowledges the First Circuit's admonition to be especially cautious in granting summary judgment when pretext is at issue. See Harrington v. Aggregate Indus. Ne. Region, Inc., No. 11-1511, 2012 WL 372708, at *6 (1st Cir. Feb. 7, 2012) (citing Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998)). Nevertheless, the evidence Lewis has produced regarding pretext is "so weak" that summary judgment is appropriate. See Kosereis, 331 F.3d at 216 (affirming the district court's grant of summary judgment where the plaintiff failed to show that the other employees were so similarly situated that their disparate treatment signaled pretext).

**III. CONCLUSION**

For the foregoing reasons, this Court GRANTS the School District's motion for summary judgment.

**SO ORDERED.**

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE